Citation Nr: 1706052 
Decision Date: 02/28/17 Archive Date: 03/03/17

DOCKET NO. 09-23 156 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida


THE ISSUE

Entitlement to service connection for hypertension, claimed as secondary to service-connected diabetes mellitus, type II or as due to exposure to herbicides.


REPRESENTATION

Appellant represented by: The American Legion


WITNESSES AT HEARING ON APPEAL

The Veteran and his wife


ATTORNEY FOR THE BOARD

P. M. Johnson, Associate Counsel


INTRODUCTION

The Veteran had active service from February 1968 to February 1972, including service in the Republic of Vietnam. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a September 2008 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in St. Petersburg, Florida. 

The case was remanded for further development in October 2013 and March 2016. Review of the completed development reveals that, at the very least, substantial compliance with the remand directives was obtained. Stegall v. West, 11 Vet. App. 268 (1998); Dyment v. West, 13 Vet. App. 141, 146-47 (1999).

The Veteran testified at a Travel Board hearing in October 2012 before the undersigned. A copy of the transcript has been associated with the claims file.


FINDINGS OF FACT

1. The Veteran was exposed to herbicides during his service in the Republic of Vietnam.

2. The Veteran's hypertension has not been shown to have begun during active service, or to been caused or aggravated by any incident of his active service. 

3. The Veteran's hypertension was not diagnosed within a year of exiting active service, or found to have been continuous since service.

4. The Veteran's hypertension was not caused or aggravated by any service-connected disability, including diabetes mellitus, type II. 


CONCLUSION OF LAW

The criteria for service connection for hypertension, including as due to exposure to herbicides or as secondary to service-connected diabetes mellitus, have not been met. 38 U.S.C.A. §§ 1110, 1112 (West 2014); 38 C.F.R. §§ 3.303, 3.307, 3.309, 3.310 (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

Duties to Notify and Assist

VA has met all statutory and regulatory notice and duty to assist provisions set forth in the Veterans Claims Assistance Act of 2000 (VCAA). 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.326(a) (2016). Letters dated in February 2008 and April 2008 satisfied the duty to notify provisions with regard to the Veteran's claim. 

The Veteran's available service treatment records, VA medical treatment records, service personnel records, and indicated private medical records relating to the Veteran's hypertension have been obtained, with the exception of some Social Security Administration records. Some of the Veteran's Social Security Administration records could not be obtained by the AOJ (Agency of Original Jurisdiction). The AOJ informed the Veteran of such in an April 2013 Formal Finding of Unavailability. The Veteran was not prejudiced by the lack of records, and it is not clear that the request for these records was related to this claim for service connection for hypertension.

The Veteran was provided with a VA examination in relation to his claim in July 2008, and medical opinions regarding the etiology of his disability were obtained in November 2013 and May 2016. The VA examination, and subsequent medical opinions, contain a description of the history of the Veteran's current disability; considers the relevant medical facts and principles; and provides an opinion regarding the nature and etiology of the Veteran's hypertension; therefore, the Board finds that the opinions provided are adequate to resolve the issue on appeal. The Veteran has not identified any outstanding, relevant records in relation to his claim for service connection for hypertension. Thus, VA's duty to assist with respect to obtaining relevant records and providing a VA examination has been met. 38 C.F.R. § 3.159(c); Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). 

The Veteran testified at a hearing in October 2012. The hearing focused on the elements necessary to substantiate the Veteran's claim for service connection and, through his testimony, the Veteran demonstrated that he had actual knowledge that he needed to show the elements necessary to establish service connection (on a direct or secondary basis). See Bryant v. Shinseki, 23 Vet. App. 488 (2010). Further, the Veteran had ample opportunity to submit evidence and argument to substantiate the claim. He has not asserted that VA failed to comply with 38 C.F.R. § 3.103(c)(2), nor has he identified any prejudice in the conduct of the hearing.

In October 2013 and again in March 2016, the Board remanded the Veteran's claim in order to obtain supplemental opinions regarding the Veteran claim for hypertension. Supplemental opinions were obtained in November 2013 and May 2016 addressing the Veteran's hypertension claim. The Board is satisfied that there was substantial compliance with its previous remand directives. See Stegall v. West, 11 Vet. App. 268 (1998); Dyment v. West, 13 Vet. App. 141, 146-47 (1999).

As there is no indication that any failure on the part of VA to provide additional notice or assistance reasonably affects the outcome of this case, the Board finds that any such failure to be harmless. Further, the purpose behind the notice requirement has been satisfied because the Veteran has been afforded a meaningful opportunity to participate effectively in the processing of his claims, to include the opportunity to present pertinent evidence. Therefore, no further assistance to the Veteran with the development of evidence is required. Mayfield v. Nicholson, 19 Vet. App. 103 (2005), rev'd on other grounds, 444 F. 3d 1328 (Fed. Cir. 2006); 38 C.F.R. § 3.103 (2016). 



Entitlement to Service Connection for Hypertension

The Board has reviewed all of the evidence in the Veteran's claims file with an emphasis on the evidence relevant to this appeal. Although the Board has an obligation to provide reasons and bases supporting its decision, there is no need to discuss, in detail, every piece of evidence of record. Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000). Consequently, the following discussion will be limited to the evidence the Board finds to be relevant.

In January 2008, the Veteran filed a claim for service connection for hypertension. The Veteran stated that he suffered from multiple conditions due to his service-connected diabetes mellitus, type II, including hypertension. 

In general, service connection may be granted for a disability or injury incurred in or aggravated by active service. 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303. Notwithstanding the above, service connection may be granted for disability shown after service, when all of the evidence, including that pertinent to service, shows that it was incurred or aggravated in service. 38 C.F.R. § 3.303(d).

Establishing service connection generally requires competent evidence of three things: (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship, i.e., a nexus, between the current disability and the disease or injury incurred or aggravated during service. See Shedden v. Principi, 381 F. 3d 1163, 1167 (Fed. Cir. 2004). 

Service connection may also be granted for disability which is proximately due to, or aggravated by, a service-connected disease or injury. 38 C.F.R. § 3.310 (a). "When aggravation of a veteran's non-service-connected condition is proximately due to or the result of a service-connected condition, such veteran shall be compensated for the degree of disability (but only that degree) over and above the degree of disability existing prior to the aggravation." Allen v. Brown, 7 Vet. App. 439 (1995).

In evaluating a claim, the Board must determine the value of all evidence submitted, including lay and medical evidence. Buchanan v. Nicholson, 451 F.3d 1331, 1335 (2006). The evaluation of evidence generally involves a three-step inquiry: (1) determining the competency of the source; (2) determining credibility, or worthiness of belief, and (3) weighing its probative value. Barr v. Nicholson, 21 Vet. App. 303, 308 (2007); Caluza v. Brown, 7 Vet. App. 498, 511-12 (1995).

A layperson is competent to report on the onset and continuity of current symptomatology based on personal knowledge. See Layno v. Brown, 6 Vet. App. 465, 470 (1994). Lay evidence can also be competent and sufficient evidence of a diagnosis or to establish etiology if the layperson: (1) is competent to identify the medical condition, (2) is reporting a contemporaneous medical diagnosis, or (3) is describing symptoms that support a later diagnosis by a medical professional. Jandreau v. Nicholson, 492 F.3d 1372, at 1376-77 (Fed. Cir. 2007).

"Competent lay evidence" is any evidence not requiring that the proponent have specialized education, training or experience, but is provided by a person who has the knowledge of facts or circumstances and conveys matters that can be observed and described by a lay person. 38 C.F.R. § 3.159(a)(2); Layno, at 469-70 (1994).

In determining whether service connection is warranted for a disability, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the Veteran prevailing in either event, or whether a preponderance of the evidence is against the claim, in which case the claim is denied. 38 U.S.C.A. § 5107; Gilbert v. Derwinski, 1 Vet. App. 49 (1990). When there is an approximate balance of positive and negative evidence regarding any issue material to the determination, the benefit of the doubt is afforded the claimant. 

Additionally, several alternative paths to service connection exist for certain chronic diseases identified in 38 C.F.R. §3.309(a), including hypertension. 38 C.F.R. § 3.309. Service connection may be awarded if a chronic disease manifests itself and is identified as such in service, or within the presumptive period under 38 C.F.R. § 3.307, and the Veteran presently has the same condition, unless the condition is clearly attributable to intercurrent causes. 38 U.S.C.A. § 1112; 38 C.F.R. §§ 3.307, 3.309; see Walker v. Shinseki, 708 F.3d 1331, 1336 (Fed. Cir. 2013). Additionally, the continuity of symptomatology provision of 38 C.F.R. § 3.303(b) has been interpreted as an alternative to service connection for the chronic diseases listed in 38 C.F.R. § 3.309(a). See Walker, at 1331. 

The Board finds, however, that service connection for hypertension is not available under 38 C.F.R. §3.309(a) as there is no evidence that the Veteran had hypertension during service or within a year of separation from service. The Veteran's service treatment records are silent for a report of hypertension during service. His evaluation at separation indicated blood pressure of 132/78 and no significant findings were noted regarding the Veteran's blood pressure. During the Veteran's Board hearing, he stated that it was not his contention that his hypertension started during service (or within a year of separation from service). His representative indicated that it took many years after the Veteran's separation from service for his condition to manifest. While the evidence is unclear exactly when the Veteran's hypertension began (the earliest diagnosis of record is in December 2002), none of the evidence of record indicates that the Veteran's hypertension began during service or within a year of separation from service. Accordingly, the Board finds that service connection for hypertension is not warranted under 38 C.F.R. §3.309. 

Service connection may also be granted on a presumptive basis for certain diseases associated with exposure to certain herbicide agents, even though there is no record of such disease during service, if they manifest to a compensable degree any time after service, in a veteran who had active military, naval, or air service for at least 90 days, during the period beginning on January 9, 1962 and ending on May 7, 1975, in the Republic of Vietnam, including the waters offshore, and other locations if service involved duty or visitation in Vietnam. 38 U.S.C.A. § 1116; 38 C.F.R. §§ 3.307, 3.309(e), 3.313. This presumption may be rebutted by affirmative evidence to the contrary. 38 U.S.C.A. § 1113; 38 C.F.R. §§ 3.307, 3.309. Here, the Veteran's had service in the Republic of Vietnam during the appropriate period and his exposure to herbicide agents is conceded. Unfortunately, hypertension is not listed as a condition that is presumed to be the result of exposure to herbicides. 38 C.F.R. § 3.309 (e) (2016).

Since the Veteran filed for service connection for hypertension in January 2008, VA amended 38 C.F.R. § 3.309 (e) to add hairy cell leukemia and other chronic B-cell leukemias, Parkinson's disease, and ischemic heart disease (including, but not limited to, acute, subacute, and old myocardial infarction; atherosclerotic cardiovascular disease including coronary artery disease (including coronary spasm) and coronary bypass surgery; and stable, unstable and Prinzmetal's angina) to the list of diseases associated with exposure to certain herbicide agents. See 75 Fed. Reg. 53,202. Note 3 at the end of § 3.309 states that: "for purposes of this section, the term ischemic heart disease does not include hypertension or peripheral manifestations of arteriosclerosis such as peripheral vascular disease or stroke, or any other condition that does not qualify within the generally accepted medical definition of ischemic heart disease." The Board notes that hypertension is specifically excluded by regulation from presumptive service connection under 38 C.F.R. § 3.309, and service connection is not available on a presumptive basis as due to exposure to herbicides. 

Nevertheless, when a Veteran is found not to be entitled to a regulatory presumption of service connection for a given disability, the claim must nevertheless be reviewed to determine whether service connection can be established on a another basis. Combee v. Brown, 34 F. 3d. 1039 (Fed. Cir. 1994). As such, the Board will also consider whether service connection is warranted based upon exposure to herbicides without the presumption or as secondary to any of his service-connected conditions. 

It is notable that the National Academy of Sciences (NAS) has placed hypertension in the category of "limited or suggestive evidence of an association" with exposure to herbicides. See e.g., Health Effects Not Associated with Exposure to Certain Herbicide Agents, 75 Fed. Reg. 32,540, 32,549 (June 8, 2010); Health Outcomes Not Associated With Exposure to Certain Herbicide Agents; Veterans and Agent Orange: Update 2008, 75 Fed. Reg. 81,332, 81,333 (December 27, 2010). This was reiterated in again Update 2010. See Determinations Concerning Illnesses Discussed in National Academy of Sciences Report: Veterans and Agent Orange: Update 2010, 77 Fed. Reg. 47,924, 47,926 (Aug. 10, 2012). Based upon these findings, a medical opinion was obtained in May 2016 regarding whether there was a direct nexus between the Veteran's exposure to herbicides and his hypertension. The VA examiner opined that it is less likely than not that the Veteran's hypertension began during active service or is related to any incident of service, including exposure to herbicides. The examiner opined that the NAS report does not provide evidence of a nexus many years after exposure. The examiner noted that the Veteran discharged in 1972 (his last known exposure to Agent Orange), and was not diagnosed with hypertension until the early 2000's. The examiner also noted that hypertension is very common in the general population with no exposure at the Veteran's age of diagnosis. The examiner indicated that this information outweighed the limited or suggestive evidence of an association provided by the NAS report and that it was less likely than not that the Veteran's hypertension was related to any incident of service, including exposure to herbicides. 

To the extent that the Veteran has argued that there is a link between his exposure to herbicides (Agent Orange) and his hypertension, the Board finds that the Veteran is not competent to make such a diagnosis. The presence of an etiological relationship between hypertension and exposure to a chemical compound is beyond the scope of lay diagnosis. See Jandreau, at 1376-77. 

The Board finds that the opinion of the 2016 VA examiner to be the evidence of greatest weight of record regarding the etiological relationship between the Veteran's exposure to herbicides and his hypertension. The Board notes that the VA examiner's opinion both considers the Veteran's specific medical history, as well as, the findings made by the NAS report. Unfortunately, this evidence weights against a nexus between the Veteran's hypertension and his exposure to herbicides; accordingly, the Board finds that service connection for hypertension is not available on this basis. 

However, the Board must still address the Veteran's primary contention that his hypertension has been caused by, or aggravated by, his diabetes mellitus. In his December 2008 Notice of Disagreement, the Veteran stated that the VA was ignoring the VA medical examiner's opinion that his hypertension is at least as likely as not related to, or aggravated by, his diabetes. In the Veteran's VA Form 9, he noted that he would like to continue his appeal of his denial of hypertension as secondary to my diabetes mellitus II condition, and that 38 C.F.R. § 3.309, as well as, the VA Agent Orange Registry Program "indicate that hypertension can be claimed as secondary to diabetes of which I currently am service-connected." The Board acknowledges that the Veteran is service-connected for diabetes mellitus, type II, and that a disability found to be at least as likely as not due to, or aggravated by, this service-connected disability will be determined to be service connected. See 38 C.F.R. § 3.310 (a); see also Allen, at 439. 

Unfortunately, the evidence of record weighs against a finding that the Veteran's hypertension was caused by, or has been aggravated by, his service-connected diabetes mellitus. None of the competent medical evidence of record supports either that the Veteran's diabetes either caused, or permanently aggravated, his hypertension. During the Veteran's Board hearing, the Veteran stated that none of his physicians have ever reported to him causal relationship between his diabetes and his hypertension. Treatment records from the New Port Richey Outpatient Clinic in February 2009 note that the Veteran sought an opinion regarding whether his hypertension warranted service connection. The records note that the Veteran did not have hypertension while in the military and that the Veteran would have a better case for his diabetes being a possible cause for his erectile dysfunction. The Veteran's medical records did not provide evidence that the Veteran's service-connected diabetes at least as likely as not, either caused or aggravated his hypertension. 

The Veteran was provided a VA medical examination in July 2008 and medical opinions were obtained in November 2013 and May 2016. The July 2008 examiner opined that the Veteran's hypertension was not caused by, or a result of, his type II diabetes. The examiner explained that the Veteran had normal renal function, which did not indicate a current relationship between the two conditions. As noted above, the Veteran agued in his 2008 NOD that this opinion was positive opinion; however, the Board notes that the examiner stated in his report that "Hypertension/ED is not caused by or a result of DM, type II." 

During the Veteran's Board hearing, the Veteran's representative argued that the July 2008 opinion was inadequate as it indicated that the Veteran's hypertension had its onset in 2003, but that the condition likely predated that diagnosis. 

Additional medical opinions were sought in November 2013 and May 2016. Both of these opinions indicate that the Veteran's testimony regarding the onset of his hypertension was considered; however, both opinions opined that it was less likely than not that the Veteran's hypertension was caused or aggravated (permanently worsened) by his service-connected diabetes mellitus. The examiner explained that diabetes is not known to have a direct causative relationship with diabetes and is not listed as a direct risk factor for hypertension. The examined noted that renal dysfunction is an identified risk factor for secondary hypertension, which could be caused by diabetes. The Veteran's medical records, however, have not shown a diagnosis of renal impairment, including renal impairment due to diabetes. As this condition is not present, the examiner concluded that the Veteran's service-connected diabetes less likely than not either caused, or aggravated his hypertension. Based upon this evidence, the Board finds that the preponderance of the evidence is against the Veteran's service connection claim for hypertension on a secondary basis. 38 C.F.R. § 3.310(a).

In summation, the Board finds that the evidence of record weighs against a finding that the Veteran's hypertension has been caused by or aggravated by the Veteran's active service or his service-connected diabetes. As there is no evidence that the Veteran's hypertension manifested during service or within one year of his discharge and there is no competent evidence that the his hypertension is the result of his exposure to Agent Orange, the Board finds that the preponderance of the evidence is against the Veteran's service connection claim for hypertension on a direct and a presumptive basis. Consequently, the benefit-of-the-doubt rule does not apply, and the claim must be denied. 38 U.S.C.A. § 5107(b) (West 2014); Gilbert v. Derwinski, 1 Vet. App. 49, 55 (1990).





ORDER

Entitlement to service connection for hypertension, including as due to exposure to herbicides or as secondary to service-connected diabetes mellitus, is denied.


____________________________________________
K. PARAKKAL
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs